We will turn to the next matter for argument, which is In Re Merck&Co. Mr. Daly. May it please the court. My name is Joseph Daly. I'm here for the Appellant's Hawaii Labor Financial Fund and Halpert Enterprises, suing derivatively on behalf of Merck&Co. With me at counsel table are my partners Doug Britton and co-counsel Peter Perlman. Your honors, I'd like to reserve three minutes for rebuttal time, please. Granted. Thank you. This morning, your honors, I'm going to talk about the traditional liberality of amendment, the pleading of demand futility, and the interplay between the two in this case. Now, this court has never held that derivative suit plaintiffs only get one chance to plead their case. In fact, it's to the contrary. In the Blasband case, 971 F. 2nd at 1055, this court noted the, quote, strong preference for leave to amend, and there allowed amendment so that the plaintiff could allege additional facts showing demand futility. Similarly, in the Lewis case, 671 F. 2nd at 787, this court held that the lower court had abused its discretion in refusing to allow amendment with facts showing demand futility. And Judge Yawn, in your district court two years ago, in the Amalgamated Bank v. Yost case, despite your granting the motion to dismiss of the complaint for failure to plead demand futility, you nonetheless allowed the plaintiff leave to amend, specifically citing the leave shall be freely given language of Federal Rule of Civil Procedure 15a. Well, yeah, but will permitting amendment with ad-required information encourage plaintiffs who don't have clear evidence of demand futility to file derivative actions without making a demand on the board? I don't believe it will, Judge Cowan. The rule in Beam and its progeny, the general rule that plaintiffs are generally not entitled to discovery in order to show demand futility, is not violated,  and that is, first of all, the general gatekeeping rule remains in effect. However, and I think your question assumed that plaintiffs would be coming in with bare bones or frivolous complaints. In this particular case, when we come in with an adequate complaint and we happen to get, after acquired discovery, outside the bounds of traditional discovery and a discovery request and then an order by the district court that that discovery should be handed to us, I don't think that rule is undermined at all. The Beam rule remains in effect. While plaintiffs may not generally be entitled to use discovery, if they acquire somehow facts that can bolster those demand futility allegations, there should be no reason why they cannot use them in the broader context of the fact that derivatives suit plaintiffs often are granted leave to amend. So would you have us adopt a rule that is at variance with what I understand the jurisprudence in the state courts to have been, and that is generally that discovery may not be used to supplement allegations of demand futility? No, we don't want you to adopt a rule, of course. I ask about a rule because, as you correctly point out, we really didn't reach that in Blasband. I understand, and in the state court case from which this court's Blasband decision emanated from, there, in the Rails v. Blasband case, despite pointing out the fact that demand futility allegations cannot be, pardon me, that plaintiffs are not entitled to demand discovery in order to show that demand futility, that particular court did realize that there may be cases, although perhaps not in that case, there may be cases when the district court, in its discretion, may want to allow some form of discovery. To follow up on Judge Cowen's question, how do we prevent this from becoming the camel's nose under the tent, if you will, and creating an exception that virtually swallows this general rule of discovery not being used to supplement the original complaint allegations on demand futility? I understand the court's concerns. However, I don't think the concerns are quite as dire, perhaps, as some people may think. Trust the district courts to handle it correctly? Of course. I mean that very truthfully. Is that part of the answer? I mean that without an ounce of superciliousness, nor I. All right. No, because... They know the cases better and they have to manage them. Right. And I think we can't lose sight of the fact that the facts in this case are very unique to this case. In this case, we don't have to rely upon the district court having found good cause to allow discovery, since the discovery in this case was given voluntarily. That's correct. So that we really don't have to reach the question that Judge Smith just posed, namely whether we should reside in the district court the authority whenever it sees proper with just course shown to allow discovery, since in this case there was no court-ordered discovery. And, Judge Collin, you said it better than I was about to say it. What I meant was the facts in this case are so unique. We're not asking for a sweeping rule here. You've got an agreement, right? You've got an agreement. You've got an agreement as to discovery that is permissible, and the other side is stuck with discovery that has permissibly been conducted. It was a bargain. Offer acceptance consideration. That's why we really don't think that the rule in being is violated at all. We adhere to that rule. We believe that rule is strong going forward, and the district court judges, as you pointed out, will retain their gatekeeper function as they have. If I understand your briefing correctly, and all the briefing in this case on both sides was literature. Really, I mean it as a compliment, was legal literature on both sides. Your position is that, as a general rule, discovery is not allowed, but a district court could allow discovery for good cause shown. But in this case, we don't even have to go that far, since the discovery here was voluntary. Exactly. And it would have made no difference whether it were my way of discovery, voluntarily engaged in it, or if you found this independently through a third source. And I don't mean to denigrate the source of the information, but we just as well could have been seeking to amend with documents we found on the side of the road, or documents we discovered through our continuing search of the media, of SEC filings, et cetera. That would certainly be a different question, though, if you did it that way, as opposed to this way, where even though it was by stipulation, it was as a result of a discovery motion. Agreed. And I can't run away from the fact. I can't use a euphemism and try to call it something other than it was, which was discovery. However, I think the distinguishing factor here is the fact that it was voluntary. That's the issue. Defendants very well could have waited. They could have waited for Judge Chesler to rule on the pending motion to stay discovery. Had he ruled in their favor, we wouldn't have been here at all. Now, had he ruled against them and ordered them to turn over some of the 8 million documents that they were claiming that we were seeking, perhaps we would have ended up here. But that's merely hypothetical. You said a little while ago that your complaint was adequate, but you did not appeal, as I understand the papers, the dismissal of the complaint. That's correct. And that sounds to me like you're admitting the complaint was not adequate. I'm sorry. What I meant to say was going into this case, we fully believed in good faith that we had an adequate complaint. We fully believed that the five or six instances of information from these drug trials flowing into the company and flowing into the board were enough to get us over the hurdle of demand futility. If you look at the record at pages JA79 through JA85, you'll see what we are hoping to add to this case is a little more specifics, specifics that the studies, the VIGAR study, the Topol study, the Harvard study, that the results of those horrific results of those studies were actually handed into the court. I'm sorry. Pardon me. Were actually handed into the Merck board on certain days. We were actually able to give specific days of the month who actually brought the materials. There never was a proposed amendment complaint, was there? No, there was not. Now, there was just a Third Circuit case last week that pointed out that if an amendment complaint is not submitted, you don't get leave to amend. And I have read that decision and I'm not sure if the holding is quite as narrow and ironclad as that. I believe the panel there… Except in civil rights cases. Except in civil rights cases. And in that particular case, the plaintiff expected the district court on its own to respond to granting leave to amend. That gentleman didn't even bother asking for leave to amend. What we had here was a complaint pending before the district court. We had a pending motion to dismiss. We had the information then come into our possession. I suppose in hindsight, one could say we should have filed an amendment complaint at that point. But because our investigation in these sort of cases is ongoing, I think what that would have resulted in would be a series, a seriatim of complaints, motion to dismiss. We would amend again, motion to dismiss. Judge Schessler said he's not going to allow you to use any evidence that would you obtain through the discovery process. Right. And he also focused, I believe, on the adjective after acquired. He seemed very focused on the after acquired. How definite must evidence be that the company is selling a dangerous product be before a board's failure to take action loses business judgment protection? Well, you know, that may be a merits issue for a fact finder, but I think for pleading purposes, I think here we have shown more than enough that the board's conduct was egregious. Judge Smith, in the Tower Air case, if I may call your attention to that, the airline, the safety reports, the maintenance reports, you said there that we can imagine few things more egregious than putting people's lives at risk. And, you know, flying out here from the West Coast the other day, I'm serious. I was sitting in a plane and I was thinking, you know, we depend upon the pilot. We depend upon the mechanics. Two hundred lives are at stake there. And if that were egregious, no, given that the egregiousness of putting those sort of numbers at risk in Tower Air, here we have a case in which one hundred and five million prescriptions of this drug were written over four years. Twenty million Americans were taking this drug at the same time that the board was aware that there were these horrific test results coming in. Yeah, well, actually, you know, it's really not the question that I posed to you is really an unfair question. I think that issue is not before us. The only issue before us is whether you should be given leave to amend. And then I assume in the first instance the district court on an abuse of discretion standard would have to determine whether or not the business judgment rule protection is forfeited or not. Agreed. But because the district judge never passed on that because he never allowed an amended complaint with the newly found evidence. Exactly. So that we don't have to reach the ultimate merits decision in this case. Judge, I'm afraid you or your friend across the aisle might visit us again down the line. Hoping against hope, I hope we would not be back up here were we granted leave to amend. I would hope that Judge Chesler would take the materials that we had submitted. Because as you can tell from his opinion, he really refused to consider those in his decision. What I'm just saying is if it's not before us now, I have no doubt that it will be before us further on, either by you as appellant or your friend across the aisle as appellant saying. But we don't think the only issue before us at this point is whether or not you should have been allowed to file an amended complaint. Agreed. Agreed. And if we are back before you, I'm sure both of us will be very prepared to discuss the egregiousness. Why did you not submit a demand to the board of directors? That's just not done in these cases? It's done when appropriate. In this case, our litigators were very experienced in these cases, looked at the totality of the facts out there, just as Judge Chesler was required to do. But now you're admitting that totality was not sufficient now. So it would seem to me there must have been some doubt in their mind. It would have been a lot safer to make a demand. I believe at the time... Unless there's some benefit in getting to the courthouse first, if that has a factor. I've heard that said. I've read that, I believe, in the Rails case. All I can say is that the litigators here believed that based on their knowledge of the information that had come to the board, demand certainly would have been futile. This is really one of those cases where not only would you be asking the board to sue themselves, it was very clear that you would be asking the board to sue themselves. We believe their conduct in the face of documented deaths and heart attacks was so beyond the pale. But that doesn't square with the fact that you're conceding now that the complaint is not adequate. When you say I'm conceding now, what we did not do was choose to come before this court with a broad, wide-ranging appeal and try to defend that original complaint. We wanted the narrow issue of leave to amend with the after-acquired discovery that we got. And as we showed Judge Hessler, or we thought we showed, coming in with those materials in our opposition to the motion to dismiss, we were fully prepared to amend that original complaint, but that doesn't necessarily mean I don't agree that we believe that the original complaint was inadequate. We thought it was inadequate. We chose not to clutter up this appeal with trying to defend the adequacy of that original complaint, when by this time we now have another universe of documents and facts in our possession. Is there anything that would prevent you now from making a demand to the board of directors and starting a new suit? I suppose not, but stepping back, looking at it from well outside the facts of this case, but the facts of this case, yes, now more so than ever, we would never want to go to that particular board and ask them to basically sue themselves, knowing what we know now. Because you believe they are not disinterested and independent, is the first prong of the test. Exactly. Thank you. We'll have you back on record, Mr. Daly, Mr. Barron. Thank you, Your Honor. May it please the Court, Robert Barron for the appellees. The core principle here that the appeal is raising is the Delaware legal principle, correctly stated by the Court, that discovery is not part of the toolkit that derivative plaintiffs are allowed to use in order to establish demand futility and excuse their failure to make a demand. So why did you agree to allow them to have discovery instead of going to court and having discovery refused? Well, first of all, the legal rules that apply in Delaware don't and have never been held to permit the use of discovery. There's no case that holds that the judge must consider the fruits of discovery, much less a decision holding it's an abuse of discretion by the court to decline to consider that. With respect to the circumstances in which we agreed to make discovery, the case, as we've indicated in the papers, is consolidated in, as one of 30-odd cases consolidated in MDL proceedings. And I think this case really highlights the problem with drawing a distinction between what the courts characterize as voluntary discovery, which is discovery made, all discovery is makeable only after there's been a complaint filed, which is exactly what the Delaware courts are saying you're not allowed to use to establish demand futility. The Delaware court says you've got to have the facts in your hand the day you file that suit without having first made a demand. But there's no case that says that if a plaintiff came to court and for good cause shown, it couldn't have discovery. And in this case, rather than roll the dice and having to give up considerably more than you gave up through your stipulation of partial discovery, you benefited and they benefited, both of you declined to go to the mat. And my problem is I can't distinguish the Disney line of cases where plaintiffs were permitted to amend their allegations of demand futility where they have to acquire information obtained through a books and records request than from the discovery that was voluntarily given to them by you in this case. The difference is that a books and records inspection is not only able to be made before you bring a lawsuit, but the Delaware court in Beame makes clear you're supposed to make that books and records inspection before you bring your lawsuit. Discovery is entirely different. The plaintiff could have done that in this case? The plaintiff absolutely could have done that in this case and didn't do it. And gotten the minutes that they referred to? And the Delaware Supreme Court says in Beame, after Disney, and refers to the very critical discussion in the Disney case of the pattern that occurred there where the plaintiff first filed suit. And then having had his case dismissed for demand futility, goes up to the Delaware Supreme Court. Delaware Supreme Court says, well, the legal standard is different from the one applied by the Chancery Court. Case goes back down then, years after the case has been filed. The plaintiff first makes a books and records inspection request. Now, it is correct that the Chancery Court sustained the complaint. But the Chancery Court, both in Disney and then subsequently the Chancery Court in Beame and the Delaware Supreme Court in Beame, comment very negatively on what the plaintiff did and said, and they dismissed the complaint with prejudice and without leave to replead in Beame, based in part on the plaintiff's failure to have made a pre-suit inspection. And there is all the difference in the world between discovery, which doesn't exist unless the plaintiff does what the law doesn't allow him to do, unless he's got the facts in hand. Here, they aren't allowed to come to court. They can't take discovery unless they've come to court. They're not supposed, under Delaware law, even to be allowed to come to court unless they have the facts in hand. So why did you give them the discovery that you gave them in this case? According to what you just told me, if you would have gone to court, discovery would not have been forthcoming. We went to court. We were, Your Honor, in a hearing in front of the magistrate judge in New Jersey involving, at the same time, requests to lift the mandatory stay in the securities class action and produce 10 million, 20 million pages of documents that allow open-ended discovery. We were facing, and the magistrate judge was facing the fact that in our MDL proceeding, there are ERISA cases which aren't subject to any mandatory stay of discovery, and the ERISA plaintiffs were entitled, presumptively, to get discovery and to sort of be leaving the gate. And you have the derivative plaintiffs, whom we argued are entitled to discovery in the pre-demand futility phase, and they said, well, this is federal court, and those rules don't apply, which is what they said below. And they said, but anyway, we need to get going. There's a tremendous amount of work here, and it will be efficient to let us get that work underway and start doing our work because we may, after all, make a demand, and this may turn into a demand-refused case. And so we're going to need that discovery on the merits anyway. But ultimately, what this case illustrates in the MDL setting you have here is that, yes, you can call a stipulated resolution of a discovery dispute voluntary discovery or a voluntary production, but it isn't voluntary in the sense that, one, the discovery request wouldn't exist if they hadn't already brought a case that they're not supposed to bring, by law, not supposed to be able to bring, and... Yeah, but, you know, if I just put it to you this way, you could have gone to court and gotten it according to what you say, and I acknowledge that. It seems to be the general rule that you're not entitled to discovery. But there's nothing, there's no case of which I have researched very closely, which, if a district court found good cause, there's no case which says that a district judge could not deviate from that general rule and allow discovery. So that I'm left with the proposition that, yes, as a general rule, district courts are not going to allow discovery in these cases. But if a strong showing is made, there's no case which says a district court does not have discretion to grant discovery, and you must have been aware of that, as I'm aware of it, probably even more aware, and instead of going to court and saying, this is the general rule type of case, you settled with them and gave them some discovery, not all that they were seeking. And if they would have won, if they went to the district court, I don't know what the result would have been, but I'm sure it would have been even more favorable than what they claim they personally have. Two points here. First, it's true that there's been no case cited that holds that there's a blanket exclusionary rule jurisdictional or cause-back. There's no such case. There is also no case. There is no case of which I'm aware, and we did a good job on research, which says a district court could not, if it wanted to, if it were shown good cause, allow the discovery which the plaintiffs, in this case, were seeking. You must have been aware of that, as I'm aware of it. There is no case that deprives the district court, particularly sitting in an MBL proceeding with all these different kinds of cases with different rules with respect to discovery, from fashioning whatever discovery orders it wants. That's precisely why a rule here that doesn't deny, that deprives the district court of the discretion in these circumstances to say, I'm not going to consider this after-acquired discovery material for demand-futility reasons, will encourage plaintiffs to come into court and file these cases. Because the plaintiffs, this is not the only case where plaintiffs file derivative cases without making a demand, though they should have made a demand. And there are lots of other cases. There are securities cases, arrested cases. Why can't we use that as a good discretion of our district judges, all of which we've been? Because the existence of that discretion is going to open the door. It's going to incentivize plaintiffs to come in, not to make demands as they're supposed to make, but to come in, file cases, and hope that in the peculiar circumstances before the court, such as an MBL proceeding. So you're seeking that we're to have a cross-the-board rule here that discovery is not allowed in this type of case. That's the way I read your argument, that we must say that under no circumstances is a derivative plaintiff entitled to discovery, even if the district court wants to allow it. The only circumstance that we have seen in the case law... Do you want to answer the question? Yes, we believe there should be a rule except, I'm sorry, I meant to answer, except to the extent that there's been a recognized exception. The only recognized exception in the case law is the statement by the beam court that where the plaintiff has uncovered through a pre-suit books and records inspection a significant ambiguity about the independence of the board, then it's possible that discovery could be appropriate. That is the only narrow exception they have recognized. And as a general matter, yes, in order to effectuate the rule that you are supposed to have through the toolkit that Delaware and New Jersey law gives you, the right to inspect books and records, the right to make an investigation of whatever materials are available to you, you have to have the facts in hand before suit. To effectuate that rule and discourage plaintiffs from doing what the plaintiffs did here, which is to file suit and hope they're going to be able to repair a defective complaint using discovery that they're able to squeeze out of defendants who are admittedly under tremendous pressure to compromise, as we were here, and as I believe this court wants to encourage litigants to do. If you establish a rule that says you're going to be able to use material that is the product of negotiated discovery, you're not going to see a lot of compromises. You're not going to see negotiated discovery resolutions. Well, you could have had a provision in the stipulation that just said it cannot be used on the issue of demand futility, whatever discovery is taken. That's true, and it did not occur to us that, in fact... So nobody attempted that negotiation? That was not discussed in the negotiation. To be honest, it didn't occur to me that we would be punished by the district court for having facilitated a resolution of this very complicated problem. Paragraph 5 sounds to me like it was contemplated, because it says that discovery has stayed pending the ruling on the motion to dismiss except for a request for production of documents focused on the board's actions before September 04. That was the only discovery we agreed to make, Your Honor. Yeah, but that is the discovery that would enable them to enhance their issue of demand futility, wouldn't it? That sounds to me like that's what you were allowing them to do. Well, there was no discussion about what use could or could not be made of the material. Well, if I could just dovetail on Judge Young's question. Didn't Merck, in its discovery stipulation, essentially waive the argument you're making now by agreeing, and they agree in quote, all discovery in the consolidated derivative action except for a request for production of documents focused on the Merck Board of Directors' actions concerning BIACS prior to Merck's voluntary withdrawal of BIACS on September 30, 04, shall be stayed pending the court's ruling on the motion to dismiss the consolidated derivative complaint. Sounds to me that the argument you're making right now, you waived in the discovery stipulation. I didn't waive the argument. I made no agreement one way or another. You signed the stipulation. The agreement I made was that we would produce this material. What was the purpose of that pushing the agreement if it wasn't for demand futility? It was a definition of what we were doing. They were originally asking us to look for and conduct a massive document production, as were other player groups within the MDL. And what we did was narrow the scope of what we would look for and produce to those materials. They were entitled to that anyway, weren't they? They would have been entitled to get that anyway as shareholders. They did not make a demand for it. They did not make any pursuit. Are all these documents things that they could have gotten as shareholders? I don't think they could have gotten all of those materials. They could have gotten some of the materials. I would just like to turn briefly. I believe the court is correct that the appropriate remedy here, if the court is not prepared to adopt the rule that Judge Schessler has applied, which is that after acquired discovery material can't be used, the appropriate remedy here is to remand to the judge because I won't detain you with a lot of detail. The merits question is not before us. That's correct. After all of the material that is referred to here, all of these supposedly horrible studies, as Judge Schessler is well aware because he's judicially noticed them elsewhere, were in the public domain. They were given to the FDA. They were studied. They were the subject of a very extensive debate. Could you just help me one minute? I agree with you. I don't know. We have, of course, we don't conference before arguments. So I don't know my colleague's rule. But if we were to adopt that, then I agree it is the proper thing. That issue, the merits issue is not before us. And Judge Schessler will then have to rule on that if we allow the amendment. Is his ruling subject to an abuse of discretion standard? Would you say? Is that correct? It is. Okay. It clearly is. I see. All right. And in order for him to make a ruling, for any court to make a ruling on that, the court is going to have to have the benefit of knowing what the status of those materials was. Was it secret information given to the board of directors? Or was it in the New York Times and available on the FDA website and considered, in fact, by the FDA at public hearings and extensively debated in the press? I'm out of time. I see. Thank you. Thank you very much. Thank you, Mr. Farriman. Mr. Bailie, you have the floor. Three very quick points, Your Honors. First, I need to take issue with Mr. Barron's representation that Beam says you were supposed to make a books and records inspection. That is not what Beam says at all. In fact, at Note 52, it says we have said that a failure to use a Section 220 of this in the Delaware Books and Records should not alter the standard to be applied to consideration of an allegation of demeaned futility. A plaintiff's use or failure to use a books and records inspection does not change the standard to be applied to review of the complaint. I agree with that, but you could have. That's the problem. I don't think we could have. Or a problem. Mr. Barron spoke repeatedly of the Delaware Books and Records Inspection, but Merck is a New Jersey company. We would have had to make a books and records inspection under New Jersey Books and Records Inspection Statute. That is Statute 14 large A colon 5-28. And when you read that, there's no provision in there for inspection of board minutes. There's inspection of shareholder lists, various and sundry matters, but there's no inspection of the very board minutes. I think under New Jersey, though, you'd have to go to court to get an inspection. I think that was... All right. He also said that Beam says that we are not allowed to use discovery to supplement demand futility allegations. And Beam doesn't say that. Beam says generally you are not entitled to, which brings us back to the question that brought us all here today, which is whether or not we can use after acquired discovery that was voluntarily handed over. Also, he mentioned the standard of review was abuse of discretion. Pardon me. But the PS&E case out of New Jersey 173, New Jersey 258 at... PSENG. Yes, PSENG. At 287 says we also make clear that an appellate court's review of a trial court's decision under Rule 4 colon 32-5, in other words, or the modified business judgment rule is de novo on the record. And finally, I would add that... What's the site of that? I'm sorry. The site is 173, New Jersey. New Jersey 258 at 287. All right. Thank you. And finally, finishing up here, hearkening back to the camel's nose under the tent comment, I can't recall which one of the three of you, Your Honors, said this, but the PS&E... I've lapsed into trite metaphor throughout the morning. I don't take the responsibility for that. And whether or not that would incentivize plaintiffs to come forward with borderline complaints in the hope of circumventing the demand requirement. Well, again, the PS&E case points out that the practical reality is that in many cases, a shareholder will want to make a demand on the board to avoid the burden of demonstrating demand futility because under the modified business judgment rule, once a demand is made and refused, then the burden shifts to the defendants for them to show that their decision to refuse the demand was reasonable, etc., etc. So I really don't think there's much here to worry about. This is a unique situation based upon unique facts. Given what we were able to put in our showing to Judge Chesler, I fully believe we could produce a viable complaint down below, and we would respectfully ask that this panel reverse the district court's decision. Thank you very much, Mr. Bailey, and a thank you to all of the counsel. As Judge Callin mentioned, this was an exquisitely well-briefed case. It was also an extremely well-argued case. And we thank counsel for their respective jobs here in the matter, which we will take under advisement. Thank you. The next matter for the morning is Henry v. the BIA.